IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PIPER A. ROUNTREE, | ) | CASE NO. 7:18CV00318 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| A. DAVID ROBINSON, ET AL., | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Piper A. Rountree, a Virginia inmate proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983, alleging that officials at Fluvanna Correctional Center for Women ("FCCW") were interfering with her constitutional right to access the court by changing an FCCW computer use policy. After review of the record, the court concludes that the defendants are entitled to summary judgment.

I.

A. Rountree's Complaint.

Virginia Department of Corrections ("VDOC") Chief of Corrections Operations, A. David Robinson, issued a memorandum on June 7, 2018, notifying all VDOC Operational Unit Heads that starting in 30 days, inmates would no longer be allowed to save documents to prison law library computers. The memorandum instructed staff that after July 7, 2018, any inmate's legal documents saved to a law library computer should be printed out for her at no cost and then deleted.

On July 6, 2018, the court docketed Rountree's § 1983 complaint and her motion seeking to enjoin the defendants from implementing this computer policy. Rountree claimed that without computer access to edit and complete existing drafts, she could not complete pleadings for an

intended civil rights complaint about her religious practices before the statute of limitations would expire in August 2018 as to some of her claims. United States Magistrate Judge Robert S. Ballou reviewed Rountree's allegations and issued an order on July 6, 2018, directing the warden of FCCW to respond to Rountree's motion for interlocutory relief, to preserve any digital copies of her legal documents that were then stored on an FCCW computer, and to allow her to keep paper copies of all such documents.

B.  The Defendants' Evidence.

In support of their response in opposition to Rountree's motion for interlocutory relief, the defendants submit affidavits by Rebecca Young, FCCW Assistant Warden ("Young Aff."); D. Carter, FCCW Law Library Supervisor ("Carter Aff."); M. Welch, Operations Support Manager and Contract Administrator for VDOC ("Welch Aff."); and K. Yadav, Director of Field Support and Technology for VDOC ("Yadav Aff.").[1] They assert that the change in computer practices at FCCW was implemented to bring that facility in line with VDOC policy, which never has permitted inmates to create and store documents on law library computers.[2]

VDOC Operating Procedure ("OP") 866.3, Offender Legal Access, "provides guidance for offender access to courts and legal representatives, and ensures legal resources are available" for them at VDOC facilities. OP 866.3(I); Welch Aff. Encl. B, ECF No. 6-1. It was drafted and implemented in compliance with relevant standards of the American Correctional Association ("ACA"), a professional organization that audits and accredits correctional facilities based on nationwide standards. "FCCW is ACA accredited." Welch Aff. at ¶ 7. OP 866.3 does not

---

[1] The evidence summarized here about VDOC and FCCW polices is undisputed, except where otherwise noted.

[2] Rountree presents evidence that the practice at FCCW for several years before June of 2018 had been to allow inmates to draft and save research and legal documents on the law library computers. Rountree has not presented any written VDOC policy allowing this practice, however.

2

require that VDOC facilities provide equipment for inmates to type their court submissions, nor does it permit inmates to create or store documents on law library computers. Moreover, OP 866.3(IV)(D)(6)(e)(i)-(ii) authorizes inmates to use law library computers for "legitimate purposes only as allowed in the facility law library rules" and prohibits use of law library computers and other equipment for any other purpose.

In the summer of 2017, VDOC officials began the complicated process of changing vendors for inmate legal research services. In so doing, they discovered that at eight of the thirty-five VDOC facilities, staff had been improperly permitting inmates to type and store their legal research and other documents on law library computers. This practice was inconsistent with VDOC policy on inmates' use of technology, which contemplated that law library computers would be provided only to assist inmates with legal research and not as storage devices for inmates' electronic documents. See OP 866.3(IV)(E)(3) ("Offenders shall be responsible for the storage of their personal legal materials in their housing area."). Officials also discovered that inmates had used law library computers to type personal letters and documents and had used software inappropriately.

After consultation with senior informational technology ("IT") staff, VDOC administrators decided to standardize law library computer usage at all VDOC facilities. They determined that standardization was necessary to facilitate efficient monitoring of inmate computer usage and to maximize use of limited law library legal research resources for a larger number of inmates. The standardization plan included several facets: (a) switch from Westlaw to Lexis for inmate legal research; (b) delete stored information on law library computers and "clean up" the computers' software and hardware to ensure uniformity and consistency at all facilities; (c) set up controlled access on the law library computers—to require inmates to login

with a password, to allow access only to legal research programs, and to eliminate inmate access to word processing and other software applications outside of the legal research program (which would prevent inmates' use of the devices to type and store documents); and (d) install new or additional electronic typewriters for inmates to use to type legal documents. Id. at ¶ 16.

Robinson's June 7, 2018 memorandum was issued as a 30-day advance notice of the changes that were set to begin on July 7, 2018. FCCW law library supervisor Carter placed a laminated copy of the memorandum at each of the computers in the law library on June 12, 2018, to give inmates ample time to complete and print their documents before having them deleted. Carter's records reflect that Rountree visited the law library on June 7, 11, 12, 13, 14, 18, 19, 20, 21, 25, 26, 27 and 28, and on July 2, 3, 5, 10, and 11. She was also scheduled to use the law library on July 12 and 13, 2018. Early in July 2018, free of charge, Rountree printed approximately 600 double-sided pages of her legal documents stored on the law library computer.

After Rountree filed her § 1983 complaint in early July 2018, the VDOC's roll out of the computer usage changes was "put on hold." Welch Aff. at ¶ 17. On July 10, 2018, free of charge, Rountree printed another 950 additional double-sided pages of her legal documents stored on the computer. Rountree also signed a document, verifying that all of her saved law library documents were successfully saved to a flash drive that was sealed in an evidence bag in her presence. That evidence bag remains locked in the warden's office at FCCW.

The defendants cite several reasons for prohibiting inmates from creating and saving their legal documents on prison law library computers. First, use of these computers for non-legal research purposes takes away time from inmates with legitimate legal research needs. FCCW houses approximately 1,200 inmates, but it provides only a limited number of computers for

4

inmates' use to conduct legal research. Use of the legal research computers for simple document typing prevents another inmate from conducting legal research, since VDOC facilities no longer maintain current, hard copies of statutes and case reporters.

Second, having inmates' legal pleadings stored on law library computers makes it "incredibly difficult for staff to appropriately monitor the use" of those computers and the nature of the documents saved there. Welch Aff. at ¶ 26.

> It is VDOC's position that offenders are entitled to draft their legal documents—many of which outline claims against VDOC and VDOC staff—without significant staff interference or monitoring. VDOC does not and cannot review each and every document that may be saved on the law library computers. To [do so] would be to trespass upon an offender['s] right to conduct legal research and create her legal pleadings without staff interference. To purposefully not review documents that may be saved on VDOC computers or review offender computer activity would be dangerous and could expose offenders, staff, and the public to potential harm.
> VDOC is thus faced with the choice of potentially violating an offender's rights to conduct legal research and carry out legal claims against VDOC and its employees or turning a blind eye to offender misuse of the computers. Faced with this choice, VDOC decided to limit offenders' use of the law library computers by permitting only access to legal research materials and permitting offenders to type legal documents on electronic typewriters. Offenders are then responsible for the storage of their own legal documents.

Welch Aff. at ¶¶ 29-33 (emphasis added).

Third, the varying computer usage practices between facilities in the past caused inmates problems with their legal work. Inmates who created documents on a law library computer at one VDOC facility and were later transferred to a facility that did not allow that practice, "encountered confusion and a loss of their electronic documents." Id. at ¶ 34. These inmates would expect the computer usage practice to be the same at the new facility, creating tension between inmates and staff.

Fourth, when VDOC facilities are managing their computers differently, VDOC's IT staff finds it more difficult to maintain computer security and troubleshoot problems. Yadav

states, "When managing IT assets across multiple facilities, uniformity and standardization are key to appropriately managing access and minimizing the risk of misuse, both from internal users and potential external attacks." Yadav Aff. ¶ 10, ECF No. 6-2.

> Operating uniform computer systems allows IT staff to quickly ascertain whether there is a problem with any particular computer or location because differences between machines and facilities stand out more readily when the systems are uniform. Uniformity also makes troubleshooting easier for IT staff because they know what should be happening on each machine they are attempting to repair.

Yadav Aff. at ¶ 11. The new computer usage limitation also implements a basic tool of IT security management to prevent inmates' inappropriate use of computers: the principle of least privilege. This principle controls user access, giving most technology users only the minimal user profiles they need to complete the tasks they are permitted or assigned, while the IT staff alone retains the administrative abilities to install software and make other changes to the computers. Under the updated computer system, an inmate, using her assigned login and password, can access only the legal research programs and cannot access any other functions on the computer.

The defendants provide evidence that the risks of computer misuse are even greater in the correctional setting than in the civilian world. While some inmates have little to no experience with computers, others are incarcerated for crimes involving sophisticated computer knowledge.

> Failure to properly monitor and restrict offenders' access to technology can lead to serious and criminal misuses of that technology. For example, upon information and belief, last year in Ohio's department of corrections it was discovered that inmates had repaired and constructed computers that they secretly installed in the ceiling of a prison. The inmates were using the computer to download pornography and illegally obtained theatrical movies for distribution in the prison. The inmates were also committing identity theft and fraud by applying for credit cards using other offenders' personal information.

Yadav Aff. at ¶¶ 17-18. VDOC officials chose to implement the described computer system and usage changes to avoid risks of serious and criminal misuse of prison equipment and software,

while also permitting inmates to use this technology for lawful purposes, such as access to courts.

### C. Procedural Development.

By order entered July 20, 2018, the undersigned construed the defendants' response to Rountree's motion for interlocutory injunctive relief as a motion for summary judgment and granted Rountree an opportunity to respond, which she did. During the same time period, however, Rountree failed to comply with the court's initial conditional filing order, directing her to provide financial documentation as required under 28 U.S.C. § 1915(b). Accordingly, by opinion and order entered August 22, 2018, the court dismissed the case without prejudice for failure to prosecute.

Rountree moved for reconsideration of the dismissal. She also filed a "motion to stay," which the court construed as a renewed motion for preliminary injunctive relief to prevent implementation of the computer use policy. To this motion, she attached another memorandum from Robinson, dated August 30, 2018, stating as follows:

> Effective October 1, 2018 offenders will no longer be able to prepare, save, and/or print using the law library computers. The law library computers will be wiped of all offender legal documents and the software utilized to prepare, save, and print documents will be removed.
>
> This memorandum serves as a 30-day notification to the offender population of the upcoming changes to law library computers and the requirement that all offender legal documents be removed from the law library computers prior to October 1, 2018. Offenders will be provided a copy of their personal legal documents stored on the law library computers at no cost. Any documents left on the computers following this 30-day period will be deleted.
>
> In order to ensure that offenders are provided the necessary resources to type legal documents[,] typewriters will be provided for offender use in the law library. Offender access to the law library typewriters to prepare legal documents will be in accordance with the facility's established protocols for the daily operation of the law library. Offender use of the typewriters will be under the general supervision of the law library supervisor.

Mot. Ex. 1, ECF No. 22-1. Rountree alleged that without the ability to edit existing computer documents and create and save future ones, she would be denied meaningful access to the courts. Specifically, she alleged that she needed continued computer access to make unspecified amendments to her new § 1983 complaint and to prepare discovery requests in that case. As relief, Rountree asked the court to stay enforcement of the policy outlined in Robinson's memoranda to bar inmates from using law library computers to create and save legal documents and to ensure that Rountree could continue doing so.

On September 27, 2018, the court granted Rountree's motion for reconsideration and reinstated the case to the active docket. The court refused Rountree's request for a preliminary injunction instructing prison officials not to implement the computer use policy, because she had not demonstrated the required factors for such extraordinary relief. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Among other reasons for denying interlocutory relief, the court noted that on September 11, 2018, the court had docketed Rountree's new, 45-page civil rights complaint under 42 U.S.C. § 1983, with 500 pages of exhibits, Rountree v. Aldridge, Case No. 7:18CV00447, alleging various religious rights claims. "To allow the court to weigh and decide Rountree's underlying claims for permanent injunctive relief," the court directed the defendants "(a) to preserve any digital copies of Rountree's legal documents that are currently stored on an FCCW computer; and (b) to preserve any paper copies of Rountree's legal documents that exceed the amount of property that she is allowed to store on site." Mem. Op. 5, ECF No. 23.

In Case No. 7:18CV00447, Rountree again failed to comply with the court's conditional filing order requiring her to submit documentation in support of her application to proceed without prepayment of the filing fee, pursuant to 28 U.S.C. § 1915(b). As such, the court

dismissed the case without prejudice in October 2018 for failure to prosecute. On November 14, 2018, the court docketed Rountree's new § 1983 complaint, Rountree v. Aldridge, Case No. 7:18CV00567, renewing all the claims previously raised in Case No. 7:18CV00447. That case is now scheduled for a bench trial in July 2020.

In the case here before the court, Rountree has responded to the defendants' arguments and evidence that the court construed as a motion for summary judgment. The defendants then filed a reply to Rountree's response. Rountree moved to strike that reply, but the court denied her motion. Upon review of the record, the court concludes that the matter is ripe for consideration of the defendants' summary judgment arguments on Rountree's remaining constitutional claims for a permanent injunction against the challenged computer use policy.[3]

II.

A. The Standard of Review.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the proof, taken in the form admissible at trial, would lead a reasonable juror to but

---

[3] Rountree's complaint clearly asserts her claims as arising under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. See Compl. 2, ECF No. 1. In Rountree's response to the defendants' evidence and arguments, however, she asserts that her Buddhist religious practice is "to act on behalf of all beings, especially similarly situated inmates, in bringing this suit." Resp. 44, ECF No. 11. As such, she seeks to reassert her challenge to the computer policy as arising under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The court has already denied Rountree's request to litigate on the behalf of other inmates. See Order 2 n. 2, ECF No. 4) (citing Hummer v. Dalton, 657 F.2d 621 (4th Cir. 1981) (holding a prisoner proceeding pro se may only seek to enforce inmate's own rights). Moreover, Rountree did not assert any claim under RLUIPA in her complaint, and she cannot do so in a response to a summary judgment motion. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (holding that plaintiff cannot use response to motion for summary judgment to amend her claims). Accordingly, the court does not consider Rountree's RLUIPA claim to be properly before the court and will not discuss it further.

one conclusion. Id. at 247-52. The court must view the record as a whole and draw all reasonable inferences from the facts in the light most favorable to Rountree, as the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).[4] To survive summary judgment, Rountree must present sufficient evidence that could carry the burden of proof on each element of her claims at trial. Id. "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

### B. A Prisoner's Right to Access the Court.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). The right of access to the courts "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 356 (1996) (emphasis added). More specifically, such legal assistance programs should be "adequate to permit an inmate to explore possible theories of relief, determine the facts that must be present to make out claims under any available theories, and to frame pleadings before the federal or state courts should he wish to do so." Strickler v. Waters, 989 F.2d 1375, 1386 (4th Cir. 1993).

On the other hand, this right of access does not require prisons to provide an inmate litigant with physical access to a law library or to provide her with whatever type of legal material or equipment that she believes to be necessary to her litigation efforts. Lewis, 518 U.S. at 351, 354, 356 (Bounds "did not create an abstract, freestanding right to a law library or legal

---

[4] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

assistance"); Strickler, 989 F.2d at 1386 (rejecting denial of access claim from inmate without regular physical access to law library who could receive legal materials from court library upon request to review in his cell). As such, an inmate's complaints about restrictions on law library use or merely theoretical assertions that a prison's legal assistance program is inefficient or inadequately stocked with resources and equipment cannot, without more, support a constitutional claim for damages based on denial of access. Lewis, 518 U.S. at 351. Where an inmate has been able to file court actions, to state a denial of access claim, she must show that specific deficiencies in the legal assistance program available to her have caused, or are likely to cause, particularized harm to her litigation of a nonfrivolous civil rights or habeas claim or claims. Id. at 351-53; Jackson v. Wiley, 352 F.Supp.2d 666, 679–80 (E.D. Va. 2004) (actual injury requires inmate to "demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded").

The inmate may satisfy this injury element by showing that a pleading "[s]he prepared was dismissed for failure to satisfy some technical requirement [that particular] deficiencies in the prison's legal assistance facilities" prevented her from learning or "that [s]he had suffered arguably actionable harm that [s]he wished to bring before the courts, but was so stymied by inadequacies of the law library that [s]he was unable even to file a complaint." Id. at 351. Conclusory allegations about mere delays or inconveniences to an inmate's legal work cannot support a denial of access claim. Strickler, 989 F.2d at 1383.

Furthermore, federal courts must limit their role in prison administration. Rather, courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. Lewis, 518 U.S. at 352. A federal district court must "scrupulously

respect the limits on its role, by not thrusting itself into prison administration and instead permitting prison administrators to exercise wide discretion within the bounds of constitutional requirements." Id. at 363.

The defendants argue that under Lewis, Rountree has not demonstrated that the defendants' decision to deny inmates the use of computers for word processing or storage of legal documents has violated, or will violate, her constitutional right to access the court. The court agrees under the circumstances presented in this case.

The only intended, future legal claims Rountree mentions are her challenges regarding VDOC's accommodation of her Buddhist religious practices. Review of the court's records indicates that since starting this lawsuit in 2018, Rountree has successfully filed and pursued a voluminous complaint seeking to achieve certain accommodations of her Buddhist practices, from celebrating particular holy days to being assigned an optimal, weekly meeting time for a group service. See Rountree, No. 7:18CV00567 (scheduled for bench trial). Her typed complaint in that case is nearly fifty pages long. She also filed two lengthy handwritten responses to the defendants' summary judgment arguments and evidence. The court has denied summary judgment as to two of her claims that are proceeding to trial. None of Rountree's claims in that religious rights complaint was dismissed as time-barred or defectively presented. Thus, the record does not reflect that the VDOC's change to computer usage practices has deprived Rountree of access to the courts on the particular legal claims that she has identified.

At the most, Rountree complains that the VDOC's current computer use policy has caused, or may in the future cause, her inconvenience, delay, and cost increases. See gen. Resp. 11-29, ECF No. 11. She now has no access to spellcheck and cut-and-paste features that a computer word processing program offers. She must recopy pages from the photocopied

documents that she previously developed on the computer. She must do so by using a typewriter (if any of the machines provided by FCCW are operable) or by handwriting,[5] a process that is both more time-consuming and costly than her prior computer method. These time and cost expenditures require her to choose between pursuing her litigation or her other desired activities, such as her job and her studies, that boost her eligibility for geriatric parole. She must choose litigation costs over other personal purchases, such as hygiene and medical items. She alleges that her handwriting is not easily legible and that writing by hand aggravates a medical condition, causing pain in her hand. While these choices may be difficult and the methods of drafting may be less than optimal, the court simply cannot find that they are sufficient to demonstrate an actual injury to Rountree's litigation efforts, as required to prevail on an access to courts claim under Lewis. Indeed, as her pending cases indicate, even without word processing capabilities, she is more than able to pursue meaningful litigation efforts.

Moreover, multiple courts across the Fourth Circuit have rejected inmates' access to courts claims raising similar computer-related issues under Lewis. See, e.g., Cunningham v. Kane, No. CV 9:16-3647-RMG-BM, 2018 WL 1054823, at *5 (D.S.C. Jan. 31, 2018), report and recommendation adopted, No. 9:16-3647-RMG, 2018 WL 1069148 (D.S.C. Feb. 23, 2018), appeal dismissed, No. 18-6286, 2018 WL 4492854 (4th Cir. May 25, 2018) (denying petition for writ of mandamus regarding configuration of prison law library, noting that inmate had filed six civil and appellate cases since the challenged law library changes); Wilde v. Scaturo, No. 816CV02318TLWJDA, 2017 WL 3916991, at *10 (D.S.C. July 28, 2017), report and

---

[5] Rountree complains that Rule 32(a)(1)(B) of the Federal Rules of Appellate Procedure requires a litigant's reproduced copies to match or exceed the clarity of a laser printer output. Such a requirement is routinely waived for pro se litigants, particularly those who are incarcerated. See, e.g., Ajaj v. United States, 479 F. Supp. 2d 501, 542 (D.S.C. 2007) (citing cases); see also Carroll v. North Carolina Dep't of Corrections, 941 F.2d 1206, *1 (4th Cir. 1991) (unpublished) (noting that pro se prisoners may handwrite legal papers for submission to the court). Rountree presents no evidence that she has had pleadings rejected by any state or federal court, based merely on the fact that they were handwritten.

recommendation adopted, No. 816CV02318TLWJDA, 2017 WL 3896627 (D.S.C. Sept. 6, 2017) (rejecting access to courts claim based on prison officials' decision to limit inmate use of computers to legal research only); Thomas v. Westfall, No. CIV.A. 2:08-00126, 2008 WL 4186853, at *2 (S.D.W. Va. Sept. 9, 2008) (denying injunctive relief to stop execution of warden's decision to have external disk drives removed from computers in prison law library and finding no likelihood that this action constituted retaliation against inmates who had filed civil lawsuits, habeas corpus petitions, and internal grievances using those computers).

Other courts across the country have reached similar conclusions. See, e.g., Mitchell v. Rouse, No. 2:11-CV-1101-WHA, 2015 WL 893262, at *9 (M.D. Ala. Mar. 2, 2015) (granting summary judgment for defendant prison officials where plaintiff presented no evidence that lack of computer word processing programs deprived him of capability to pursue particular non-frivolous claims and thus failed to show injury as required under Lewis); Cunningham v. Culliver, 2010 WL 5139083 (S.D. Ala. Nov. 9, 2010) (denying prisoner's motion for injunctive relief and finding no irreparable injury when he alleged that all of the law library computers had been removed from his prison and that his legal documents saved on the computers would not be returned to him, either in electronic or hard copy format); Chasteen v. Johnson, No. 2:12-CV-229, 2012 WL 2711391, at *1 (S.D. Ohio July 9, 2012) (rejecting access to courts claim under Lewis, based on prison officials' change restricting law library computer terminals to research only).

C. The Turner Analysis.

While "inmates retain at least some constitutional rights despite incarceration," those rights must be balanced against state interests in maintaining prison safety and security. Washington v. Harper, 494 U.S. 210, 223 (1990) (citing Turner v. Safley, 482 U.S. 78 (1987)).

As such, even if Rountree's litany of newly created difficulties in pleading preparation without word processing could be construed as impinging upon her future right to access the courts, the defendants have ably demonstrated that the computer usage changes are constitutionally sound.

"[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.'" Id. (quoting Turner, 482 U.S. at 89). This determination requires consideration of four factors, outlined in Turner:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; . . . (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

Lovelace v. Lee, 472 F.3d 174, 200 (4th Cir. 2006). In evaluating these factors, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The court concludes that the defendants' evidence establishes how the decision to adjust the law library computer usage policy in 2018 was reasonably related to legitimate prison interests in safety and security.

In satisfaction of the first Turner factor, the defendants have established that the VDOC's law library computer practice is rationally connected to legitimate needs to maintain security and order within Virginia's prisons and to appropriately manage prison resources. See Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002) (prison safety and security are legitimate penological interests); Hassan v. Newhart, No. 3:12cv876, 2015 WL 139085, at *4 (E.D. Va. Jan. 9, 2015)

15

(maximizing limited prison resources is legitimate government interest). Enforcing the policy to ensure uniformity between all VDOC facilities was clearly related to, and furthered, efficient use of IT resources for trouble-shooting and repairs, as well as more effective monitoring of inmate computer use for security reasons. The changes also eliminated a conundrum for prison staff— the impossibility of monitoring inmate legal documents on law library computers for security reasons, while also maintaining the inmate's attorney-client privilege and other personal aspects of the right to access the courts without staff interference.

The VDOC computer use policy never expressly permitted inmates to create and save documents on law library computers, regardless of FCCW law library practice in the past. Rountree makes much of the lack of evidence that any FCCW inmate has used law library computers in any way that was criminal or that threatened prison security.[6] Lack of such evidence is irrelevant to the Turner analysis. "Responsible prison officials must be permitted to take reasonable steps to forestall[] a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 132 (1977). "The informed discretion of prison officials that there is potential danger may be sufficient for limiting rights even though this showing might be unimpressive if . . . submitted as justification for governmental restriction of personal [rights of] members of the general public." Id. at 132 n. 9. Moreover, inmates who used FCCW law library computers to create documents, in contravention of official policy, commandeered time when

---

[6] Rountree also complains that the defendants offer only hearsay evidence about inmates' criminal misuse of computers in other states. Caselaw within the Fourth Circuit, however, provides examples of inmates losing the privilege of computer storage of documents after incidents of administrative or criminal misuse of that privilege. See, e.g., Cofield v. Hogan, No. CV CCB-16-3037, 2018 WL 1535493, at *3 (D. Md. Mar. 27, 2018) (inmate clerk authorized to use computer only to "create and update inmate pass lists, movement sheets and update inmate rosters" also created and saved on the computers "hundreds of mobile applications" that he sought to copyright); Wilde, 2017 WL 3916991, at *10 (inmates' privilege of computer use revoked, except for legal research, after inmates were caught creating and sharing sexually explicit stories on the computers).

other inmates could have used those same computers for their intended purpose—legal research. Thus, enforcing the official policy by focusing computer use on research furthers the efficient use of resources.[7]

The defendants have also offered evidence to satisfy the second Turner factor—alternative means for Rountree to exercise her right to access the courts. The computers in the law library provide access to the Lexis legal research data base for Rountree's research needs. Rountree also admits that typewriters are provided on which she can type her legal documents and communications to counsel and other advocates to assist her in preparing her case. She has also demonstrated that she is able to handwrite effective documents in furtherance of her litigation and correspondence efforts.[8] Indeed, Rountree's own submissions indicate that she has contacted the Department of Justice, the institutional attorney, and Victor Glasberg, a civil rights attorney. In addition, she has access to a telephone and whatever form of visitation the prison offers. Furthermore, the court's docket indicates clearly that Rountree is not without means to litigate her cases.

Evidence on the third Turner factor also weighs in favor of the defendants. The court finds it well established that the computer use changes have had a positive impact on the allocation of prison resources. As discussed, restricting law library computer use to legal

---

[7] The undisputed evidence that the computer usage practice changed at all VDOC facility law libraries, not only at FCCW, precludes Rountree from developing a viable claim that the changes were intended as retaliation for her litigation efforts. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537 (4th Cir. 2017), cert. denied, 138 S. Ct. 755 (2018) (holding First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) defendant took action that adversely affected that protected activity, and (3) there was causal relationship between plaintiff's protected activity and defendant's conduct); Manning v. Bolden, 25 F. App'x 269, 272 (6th Cir. 2001) (prisoner "must allege a chronology of events from which retaliation may plausibly be inferred" to state a cause of action for retaliation).

[8] Rountree complains that handwriting causes pain in her hands, that use of a keyboard is less painful, and that the typewriters are often broken. The court cannot find that these inconveniences prevent or harm Rountree's litigation activities. They can be overcome through moving for extensions of time to submit court documents or seeking drafting assistance from other inmates, which Rountree has not been afraid to do in this case, given the numerous affidavits she submits from other inmates.

research created more opportunities for more inmates to conduct such research. The policy change also simplified the duties of law librarians and IT staff in monitoring the use of the computers to identify and address any improper or criminal uses of the equipment and software. Rountree complains that keeping all her documents in paper form will create a storage problem, trigger conflicts with her cell mate, and perhaps aggravate her allergy to dust mites. This fear is exaggerated. Other VDOC policies limiting the amount of property an inmate may keep in her cell will prevent these imaginary problems from becoming reality. See Clem v. Clarke, No. 7:13cv93, 2014 WL 991307 (W.D. Va. Mar. 13, 2014) (upholding VDOC's restriction on number of publications and documents inmate may keep in cell).

Finally, Rountree's suggested alternatives to the computer use policy are neither realistic nor reasonable. She argues that because the VDOC allows inmates to create and save documents on other prison computers for educational reasons, the changes to use of law library computers is an exaggerated response to security issues. The two types of computer usage, however, are clearly distinguishable. FCCW staff were not permitted to review the content of an inmate's documents on the law library computers in order to maintain the litigant's right to create her legal documents with some amount of privacy. At the same time, this purposeful respect for the inmate's right to access the court prevented appropriate monitoring of computer usage for security reasons, leaving staff and the public open to potential criminal activity. Documents on the educational computers are not subject to the same privacy concerns and may be closely monitored by staff for security threats, without similar impact on an author inmate's right to access the courts. In fact, the VDOC is not constitutionally required to provide inmates any access to computers for educational reasons. Prison officials do have an obligation to provide inmates access to legal research materials, for which computers are a necessity in today's legal

climate. Moreover, permitting inmates in one program or area of the prison to engage in certain activities does not create a right for inmates in other areas or programs to do the same. Kitchen workers use knives. Students in a maintenance course have access to screw drivers. Yet, inmate access to these items is lawfully prohibited elsewhere in the facility.[9]

Rountree proposes that instead of typewriters, the VDOC should allow inmates to purchase iPads on which they could do their legal research and create their legal documents. She asserts, "The wings and buildings are already wired to support wireless iPads for inmates, as well as the current JP5 players, which have music download abilities, abilities to type and send emails, and games." Resp. 25, ECF No. 11. The email devices permitted to inmates may provide an additional alternative means for Rountree to use in typing letters or even documents. She offers no evidence, however, that the same system which supports the email devices would also support iPads. More importantly, she does not explain how allowing inmates free reign to create documents on their personal electronic devices would eliminate the security and privacy concerns already discussed.

For the reasons stated, the court is satisfied that the evidence weighs in favor of the defendants on all of the Turner factors. Therefore, the court finds that the VDOC's restriction of law library computers for legal research only is constitutionally valid. Although the restriction may make it more difficult or inconvenient to pursue litigation efforts, it does not completely

---

[9] On this same evidence, the court finds no factual basis for any claim Rountree may be asserting in this action that the computer usage policy violates her right to equal protection. See King v. Rubenstein, 825 F.3d 206, 220-21 (4th Cir. 2016) (to prove equal protection violation, inmate must show she was treated differently than other similarly situated inmates as a result of intentional discrimination and that disparate treatment was not rationally related to any legitimate penological interest).

deprive Rountree of her right to meaningfully access the courts under <u>Lewis</u>, or unlawfully infringe upon any other constitutionally protected right.[10]

### III.

After careful review of the evidence, the court concludes that the VDOC computer usage practice that Rountree challenges does not violate her right to access the courts. In addition, the court concludes that in the event that this policy were to hinder her litigation efforts in some way or infringe on other constitutional rights, any such infringement is outweighed by the evidence that the policy furthers legitimate penological interests so as to withstand her constitutional challenges. Therefore, the court concludes that the defendants are entitled to summary judgment as a matter of law. An appropriate order will enter herewith.

The clerk will send the parties copies of this memorandum opinion and the accompanying order.

**ENTER**: This <u>13th</u> day of May, 2020.

/s/ Glen Conrad
Senior United States District Judge

---

[10] In addition to the obvious access to courts claims, Rountree's complaint and response to the defendants' evidence also assert that the challenged computer usage policy violates her rights under the Fifth Amendment prohibition against compelled self-incrimination and the Eighth Amendment protection against cruel and unusual punishments. In brief, she fears that her handwritten documents could be analyzed by a handwriting expert and used against her in some future criminal proceeding. She also characterizes as cruel punishment the hand cramps caused by handwriting, the allergy-aggravating dust mites in stored paper documents, and the harsh reality of choosing between putting in extra time on litigation or engaging in work and study to improve her chances for geriatric parole. Because the court herein finds that the challenged policy withstands constitutional scrutiny under <u>Turner</u>, it also withstands these other constitutional challenges, without a need for further discussion.